STEVEN G. KALAR
Federal Public Defender
Northern District of California
CANDIS MITCHELL
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700
Facsimile: (415) 436-7706
Email: Candis_Mitchell@fd.org

Counsel for Defendant Lozano

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **United States of America**, | Case No.: CR 2018–309 RS |
| Plaintiff, | **Defendant's Sentencing Memorandum** |
| v. | |
| **Darwin Lozano,** | Court: Courtroom 4, 17th Floor |
| Defendant. | Hearing Date: February 5, 2019 |
| | Hearing Time: 2:30 p.m. |

| | |
|---|---|
| 1 | INTRODUCTION |
| 2 | Defendant Darwin Lozano was charged in an indictment with a violations of Title 21, |
| 3 | United States Code, 841(a)(1) and 841(b)(1)(C)—Possession with Intent to Distribute |
| 4 | Methamphetamine and a violation of Title 21, United States Code, Sections 860, 841(a)(1) and |
| 5 | 841(b)(1)(B)—Possession with Intent to Distribute Methamphetamine within 1,000 Feet of a |
| 6 | School. This case was docketed as 18cr309-RS. |
| 7 | Mr. Lozano plead guilty to the above charges pursuant to a written plea agreement under |
| 8 | Federal Rule of Criminal Procedure 11(c)(1)(B). |
| 9 | He was additionally charged with five allegations in a supervised release petition of |
| 10 | committing another federal, state, or local crime. The supervised release petition originated in |
| 11 | the District of Utah and was transferred to the Northern District of California for prosecution. |
| 12 | Of the five allegations, Mr. Lozano admitted culpability for allegations two through five—all of |
| 13 | which concerned the criminal conduct charged in his federal indictment. This case was |
| 14 | docketed as 18cr333-RS. |
| 15 | Sentencing for both matters is presently set before the Court and Mr. Lozano will address |
| 16 | the sentencing factors for both cases in this memorandum. |
| 17 | Mr. Lozano requests a sentence of 18 months for his newly indicted case, 18cr309-RS, and |
| 18 | 6 months for his supervised release case, 18cr333-RS—to be served consecutively—for a total |
| 19 | of 24 months. This sentence is sufficient, but not greater than necessary, to comply with the |
| 20 | factors specified in 18 U.S.C. § 3553(a), due to Mr. Lozano's: |
| 21 | 1. Childhood and family history; |
| 22 | 2. Pervasive substance abuse problems. |

## SECTION 3553(A) FACTORS

**I. The nature and circumstances of the offense and the history and characteristics of the defendant;**

Born in Honduras, Mr. Lozano was raised in extreme poverty. Growing up he lived in a small house with only two rooms. At nine, he left school and began working in the agricultural fields. Up until he was 13, he had been informed that his father was another man in Honduras.

In fact, his mother was so young when he was born that his grandparents gave them his last name as his surname. However, when he was 15, his paternal grandmother travelled from the United States to visit him in Honduras. It was the first time that Mr. Lozano was aware that his father was alive, and, that he resided in the United States. Many Hondurans were given temporary protected status and given permission to live in the United States following the devastation of a 1999 hurricane.[1] Mr. Lozano's father first immigrated from Honduras to the United States, and then his mother, Mr. Lozano's grandmother, followed shortly after. While they both eventually changed their status to United States citizens—they did not do so early enough for Mr. Lozano to benefit from their status adjustment.

After his grandmother visited, the decision was made for Mr. Lozano to leave Honduras and travel to the United States to live with his father to get a better life and to financially help his mother and his siblings.

At that time, despite his young age, the perilous journey to the United States was safer than Honduras. In 2013, the murder rate reached an unenviable global high of 85 for every 100,000 residents.[2] In the violence that rocked the county due to warring drug fractions, the police were ineffectual in providing any semblance of security for the people who lived in shanty villages like Mr. Lozano's. Shortly before Mr. Lozano left to come to the United States, he remembered seeing his uncles get assaulted and being the victim of violence. In classrooms across the county, children would crouch underneath their desks for cover because of the gun fire that surrounded them.[3]

---

[1] *See* Jordan, Miriam, "Trump Administration Ends Protected status for Thousands on Hondurans" The New York Times, May 4, 2018. https://www.nytimes.com/2018/05/04/us/honduras-temporary-protected-status.html (last accessed Jan 29, 2019).

[2] *See* Smerwell, Phillip. "Welcome to Honduras, The Most Dangerous Country On The Planet" The Telegraph, November 16, 2013. https://www.telegraph.co.uk/news/worldnews/centralamericaandthecaribbean/honduras/10454018/Welcome-to-Honduras-the-most-dangerous-country-on-the-planet.html (last accessed Jan. 29, 2019).

[3] *See id.* "Col Raudales has 100 troops under his command at the school, part of 1,000 military police involved in the crackdown. Speaking anonymously for fear of retribution, the school's headteacher welcomed their arrival in her classrooms, recounting how her pupils used to have to take shelter under their desks when gun battles erupted outside."

1   Escaping the gang warfare of his home country, Mr. Lozano made the journey from
2   Honduras to the United States by himself carrying only the name telephone number of the
3   paternal grandmother he had met shortly before. When he was detained at the United States
4   border, he called his grandmother who put him in contact with his father. He was eventually
5   brought to live with his father in the Washington DC area. He enrolled in school and began the
6   process of adjusting his citizenship to reside in the United States. Unfortunately, the years that
7   had passed after Mr. Lozano's birth had not prepared his father for the realities of parenting
8   and his father did not readily adjust to the role. Mr. Lozano was left rudderless in an unfamiliar
9   country and he reached out to distant relatives who lived in Utah for assistance. He moved from
10  the East Coast to Utah and attempted to settle into life there. His adjustment was difficult and
11  he began hanging out with a rough crowd. At 18 and 19, he was arrested in Utah, and was
12  deported back to Honduras in 2014.

13  Once he returned to Honduras, he attempted to make a life for himself there. He met and
14  married his wife Wendy Argueta. They then had a daughter. However, his family and life in
15  Honduras were not enough to keep him there—as the draw to come to the United States to
16  work and provide for them was strong. While in the United States he could do any work he
17  could get, including day labor, construction, and washing carpets. In Honduras, he would plant
18  corn and beans, take care of cows, plant seeds, and perform the harvest. He would work on
19  someone else's land and earn $4 a day. A far cry from the earnings he could make in the states
20  where his hourly wage was equivalent to that of three days' work in Honduras.

21  Mr. Lozano made the decision to return back to the United States. In 2017, Mr. Lozano
22  was convicted in the District of Utah for re-entering the United States after previously being
23  deported. As a result of his conviction, he received a custodial sentence with three-years
24  supervised release to follow.

25  In June and July 2018, Mr. Lozano was arrested in San Francisco following two
26  opportunities the San Francisco Police Department had to observe him engaged in selling
27  drugs. In each instance, Mr. Lozano was found to have a small amount of methamphetamine
28  and heroin on his person. A street level dealer, Mr. Lozano would typically sell very small

quantities of drugs to daily users—and then would take the drugs he sold himself.

While he was in the United States Mr. Lozano began using, and then abusing methamphetamine. He started abusing it seriously about four months prior to his 2018 arrest. In that time, he began using it almost daily to work more hours to send more money to Honduras. He would also use the drug to stay awake on the nights he was sleeping out on the streets to avoid being a victim of street violence.

Mr. Lozano has had a difficult childhood and continues to suffer from substance abuse problems. When taking these factors into consideration under §3553(a) in determining the proper sentence, a sentence of 24-months is more than adequate to serve all the purposes of sentencing.

II. **The need for the sentence imposed—**

    A. **To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; To afford adequate deterrence to criminal conduct; To protect the public from further crimes of the defendant;**

Mr. Lozano does not diminish the seriousness of his misconduct. Possession of drugs with the intent to distribute is undeniably is a grave offense warranting the significant punishment Mr. Lozano has and will receive. Mr. Lozano is acutely aware that he committed a real crime, with the possibility of real victims.  But 24-months' imprisonment is sufficient.

    B. **To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;**

Mr. Lozano has had continuing difficulties stemming from the use of drugs. However, he intends to take full benefit of the drug treatment programs available to him in the Bureau of Prisons..

Additionally, Mr. Lozano intends to take advantage of vocational training provided by the Bureau of Prisons and is planning on getting his GED and any job training he can while in custody.

III. **The kinds of sentences available;**

For Counts One and Two, the Court has the authority to sentence Mr. Lozano up to a

maximum of 20 years custody and 5 years supervised release. For Count Three, the Court has the authority to sentence Mr. Lozano up to a maximum of 40 years and a minimum of 1. The Court must impose a term of supervised release of at least 6 years up to a maximum 10 years. Mr. Lozano is ineligible for probation and faces a maximum fine of $2,000,000. There is a special assessment of $300—$100 for each count.

For Mr. Lozano's supervised release case, the maximum term of custody that can be imposed is 36 months and the maximum term of supervised release is 36 months—minus any custodial sentence imposed.

**IV.   The kinds of sentence and the sentencing range established**

Because of Mr. Lozano's prior convictions, there is a total offense level of 13 and a criminal history category of IV. The resulting guideline range is 24 to 30 months.

For Mr. Lozano's supervised release violation, his Criminal History Category at the time of his conviction was III and the highest grade of violation is A, resulting in a recommended range of 18-24 months.

**V.   Any pertinent policy**

None.

**VI.   The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and**

None.

**VII.   The need to provide restitution to any victims of the offense.**

No restitution is recommended by the parties.

OBJECTIONS TO PRESENTENCE REPORT

Mr. Lozano would object to the inclusion of proposed special condition that he abstain from the use of all alcoholic beverages. Despite his addiction issues, Mr. Lozano has not had recent issues related to the abuse of alcohol and would request that the condition be modified to reflect that it should only be included should a drug abuse treatment professional make the recommendation.

CONCLUSION

For the foregoing reasons, Mr. Lozano respectfully asks the Court to sentence him as follows:

24-months' imprisonment, followed by six-years supervised release. That sentence should be fashioned as 18 months in 18cr309-RS for Counts One through Three, all counts to be served concurrently. After the term of imprisonment, there should be a three-year term of supervised released on Counts One and Two and a six-year term of supervised release on Count Three, all counts to be served concurrently.

For Mr. Lozano's supervised release violation case, 18cr333-RS the sentence should be for 6 months custody. The term of imprisonment imposed by the judgement in this case should run consecutively with his 18-month term of imprisonment in 18 cr309-RS. There should be no further supervised release in that case.

Mr. Lozano hopes the Court will recommend that he participate in drug treatment while in custody.

He makes his request in light of his **lack of youthful guidance** as he was raised primarily by himself as he left his family home when he was merely 15-years-old to make a dangerous journey to the United States. Once here, he was rejected by his father and he was shuttered off to distant relatives in Utah. His time left him bereft of a shaping hand to guide him while he was navigating the world and set him on his own course to his impending **drug and alcohol dependence.** His drug use and abuse lead him to make poor decisions that brought him before the Court.

Dated: January 29, 2019

Respectfully submitted,

STEVEN G. KALAR
Federal Public Defender
Northern District of California

　　　　　/S
CANDIS MITCHELL
Assistant Federal Public Defender

DEF.'S SENT. MEMO.
*LOZANO*, CR 2018–309 RS

7